UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID R.,[1] | ) |
| | ) No. 19 CV 2666 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| the Social Security Administration, | ) |
| | ) November 9, 2020 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

David R. ("David") seeks disability insurance benefits ("DIB"), claiming that he suffers from Crohn's disease, osteopenia, gallstones, and mid-thoracic spondylosis, which prevent him from engaging in full-time work. Before the court are the parties' cross-motions for summary judgment. For the following reasons, David's motion is denied, and the government's is granted:

**Procedural History**

David filed his DIB application in May 2016, alleging a disability onset date of December 1, 2013. (Administrative Record ("A.R.") 15, 169-72.) The government denied his application initially and on request for reconsideration. (Id. at 15, 97-99, 103-05.) David thereafter requested and received a hearing before an administrative law judge ("ALJ"), (id. at 109-13, 128-32), and on February 26, 2018, he appeared at the hearing along with his attorney and a vocational expert ("VE"),

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

(id. at 31-82). In April 2018 the ALJ issued a decision finding that David is not disabled. (Id. at 15-26.) When the Appeals Council declined to review the ALJ's decision, (id. at 1-5), the ALJ's decision became the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). David then filed this lawsuit seeking judicial review, and the parties consented to the court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Facts

David last worked in December 2013 for a temporary staffing agency performing warehouse and assembly tasks. (A.R. 37, 191.) The temporary staffing agency stopped placing him in jobs, telling him that his work was no longer needed. According to David, this explanation was a pretext, and the agency dismissed him because he requires frequent bathroom breaks. (Id. at 39-40, 102, 190; see also R. 17, Pl.'s Reply at 1.) David is missing about "60% of [his] small intestine" from small bowel resections because of his Crohn's disease. (A.R. 85, 102.) As a result, he needs to use the bathroom frequently and he experiences bleeding, vomiting, cramping, pain, and diarrhea. (Id. at 41, 198, 203, 205, 229.)

### A.  Medical Evidence

David's medical records show that at the time of his alleged disability onset date, December 1, 2013, his primary impairment was Crohn's disease, which he was diagnosed with in 1991. (A.R. 198, 203-05, 249.) He underwent laparotomies and small bowel resections in February 2001 and March 2008. (Id. at 258, 270-71.) David was hospitalized for a recurrent rectal abscess in June 2006 and underwent

surgical procedures to drain the abscess at that time and again two months later. (Id. at 55-56, 265-66, 281, 283.) He also had gallbladder surgery in March 2015. (Id. at 306, 309, 318, 405-06, 654-56.) David has experienced rectal bleeding, nausea, vomiting, cramping, recurrent pain, diarrhea, and frequent urges to use the bathroom because of Crohn's. (Id. at 40-41, 306-07, 309, 311, 438, 666, 673, 677, 679.) He has responded well to Humira, (id. at 424), a medication used to control symptoms of Crohn's, which he takes every other week by injection, (id. at 41, 441). He also takes a vitamin B12 injection once a month. (Id.)

In April 2015 David reported bilateral hip pain. (Id. at 337-38.) He was previously diagnosed with osteopenia in 2009. (Id. at 504.) In November 2015 David was involved in a car accident and hurt his back as a result. (Id. at 370.) But by December 2015 David reported that he was pain-free and had "free, full cervical [active range of motion]." (Id.)

David has seen Dr. Ashwani Sethi, a gastroenterologist, for about 25 years. (Id. at 40, 424.) Dr. Sethi's treatment records, as well as a gastrointestinal report he prepared in March 2017, document David's "intermittent urges" to use the bathroom, diarrhea, and abdominal pain. (Id. at 250, 424-26, 458, 475.) Dr. Sethi has repeatedly described David's Crohn's as "stable." (Id. at 431 (2013 record noting David has been "very stable" and "[f]rom a GI viewpoint [wa]s doing very well"), 436 (2013 record noting "no tenderness in the abdomen" and a "benign" examination), 441 (2015 record noting that David "actually has been very, very stable over the last

3

two to three years"), 458 (2016 record noting Crohn's was "[r]easonably stable"), 475 (2017 record describing David as "doing relatively well").)

During an October 2013 visit, Dr. Sethi noted that David's "last colonoscopy was in 2007." (Id. at 434.) Although David had "been doing fairly well," Dr. Sethi recommended a follow-up colonoscopy. (Id.) Dr. Sethi performed that colonoscopy in November 2013 and determined that the anastomosis (the short part of the small bowel) and anorectal region were "unremarkable" with no signs of "active" Crohn's. (Id. at 694-95 (concluding Crohn's was in remission).) Dr. Sethi performed another colonoscopy on David in January 2017 and found "[n]o active Crohn's." (Id. at 558-59.) But in March 2017 David reported diarrhea four to six times daily. (Id. at 467.) In response, Dr. Sethi recommended Imodium, Lomotil, or Questran to decrease symptoms. (Id.) At a follow-up visit in October 2017, David was "doing very well" and had decreased bowel movements to three to four times daily. (Id. at 480.)

However, Dr. Sethi stated in his gastrointestinal report that David's pain or other symptoms would interfere with his attention and concentration frequently and that David would need ready access to a bathroom. (Id. at 425.) Dr. Sethi also indicated that David would need breaks two to four times daily and would miss about four days of work each month because of his symptoms, including diarrhea and abdominal cramping. (Id. at 426; see also id. at 458 (December 2016 record noting that urges to use the restroom are "pretty normal" in bowel resection

4

patients, and that such urges "will cause [these patients] problems in their jobs unfortunately").)

**B.     Hearing Testimony**

David testified at the hearing that he stopped working in December 2013 because the temporary agency for which he worked dismissed him. (A.R. 39.) He believes that he was dismissed "because [he] was using the bathroom a lot." (Id. at 40.) David said that he has suffered from Crohn's since he was in his 20s and takes Humira and vitamin B12 injections to control his symptoms, without side effects. (Id. at 40-41, 44.) David said that since his alleged disability onset date in December 2013, he has experienced vomiting, running to the bathroom, bleeding, cramping, and pain. (Id. at 41-42.) He had surgeries in 2001, 2006, and 2008 and a gallbladder surgery after the alleged onset date. (Id.) David testified that his Crohn's has not been in an active state, and he has not experienced abdominal pain since 2015. (Id. at 41-42, 54.)

David said he has to use the bathroom five to seven times a day, often with little warning, and spends about 10 to 15 minutes for each bathroom break. (Id. at 42-43.) In describing a typical day, David said he eats breakfast at about 5:00 a.m. and uses the bathroom by 6:00 or 6:30 a.m., eats lunch at about 11:00 or 11:30 a.m. and uses the bathroom by 2:00 p.m., and then "get[s] a jump on [his] dinner" at about 3:00 p.m. and uses the bathroom between 5:00 and 6:00 p.m. (Id. at 43-44.) David said he has had accidents in the past. (Id. at 45.) As a result, when he goes anywhere, he immediately locates the bathroom just in case. (Id. at 45, 49.) David

5

testified that his urge to use the bathroom occurs even when his Crohn's is dormant "because [his] intestinal tract [has been] shortened." (Id. at 51.)

**C.    VE's Testimony**

A VE also testified at the hearing. She described David's prior work as an assembler, which is designated as light work under the Dictionary of Occupational Titles. (Id. at 72-73.) The ALJ posed a series of hypotheticals to the VE regarding whether someone with a specific hypothetical residual functional capacity ("RFC") could perform David's past work. (Id.) In response to a hypothetical question reflecting David's RFC for light work with limitations, including never climbing ladders, ropes, and scaffolds and avoiding concentrated exposure to hazards, the VE testified that such a person could work as an assembler and perform other occupations in the national economy, such as cashier, sales attendant, and hotel housekeeper. (Id.)

When the ALJ added a limitation for an additional bathroom break—beyond two 15-minute breaks and one 30- to 60-minute lunch break in a workday, the VE said that an extra break lasting "just a few minutes" generally would be accepted. (Id. at 74.) But the VE added that if the extra break lasted 10 to 15 minutes, "[t]hat could be a problem." (Id.) Based on her experience, training, surveys, and government reports, the VE explained that for jobs in which the worker is required to be at a station at designated times, such as an assembler or cashier, taking an extra break would pose an issue. (Id. at 75, 78.) But for jobs in which the worker is not required to be in a stationary position, there is "a little bit more flexibility." (Id.

6

at 75-76.) The VE further testified that two or three extra breaks would not be permitted, and that the individual could not miss more than eight to ten workdays per year. (Id. at 76-77.)

**D.     The ALJ's Decision**

The ALJ followed the required five-step process in evaluating David's DIB claim. *See* 20 C.F.R. § 404.1520(a). At step one the ALJ found that David had not engaged in substantial gainful activity since his alleged onset date. (A.R. 17.) At step two the ALJ concluded that David has the severe impairment of Crohn's and the non-severe impairments of osteopenia, gallstones, and musculoskeletal pain and mid-thoracic spondylosis. (Id. at 18.) At step three the ALJ determined that David's impairments do not meet or medically equal any listed impairment. (Id. at 19.) Before turning to step four, the ALJ assessed David as having an RFC to perform light work with limitations that he: should not be required to climb ladders, ropes, and scaffolds; should avoid concentrated exposure to hazards, unprotected heights, and dangerous, moving machinery; and would need an additional bathroom break lasting a few minutes. (Id. at 19-24.) At step four the ALJ found that David can perform his past relevant work as an assembler. (Id. at 24.) Accordingly, the ALJ found that David was not disabled from December 1, 2013, through April 18, 2018, the date of the decision. (Id. at 26.)

## Analysis

David argues that the ALJ's decision should be reversed because the ALJ: (1) improperly evaluated his subjective symptoms; (2) incorrectly weighed

Dr. Sethi's opinion; and (3) erroneously assessed David's RFC. The court reviews the ALJ's decision only to ensure that it is based on the correct legal criteria and supported by substantial evidence. *Prater v. Saul*, 947 F.3d 479, 481 (7th Cir. 2020). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation marks and citation omitted). The ALJ is required to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). But this court is "not free to replace the ALJ's estimate of the medical evidence" with its own, *see Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008), and must uphold the decision even where "reasonable minds can differ over whether [the claimant] is disabled," *see Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**A.  Symptom Evaluation**

The court begins its analysis with David's challenge to the ALJ's assessment of his statements regarding his symptoms because that assessment may inform the RFC analysis. *See Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014). An ALJ's symptom evaluation is entitled to great deference because of the ALJ's ability to observe first-hand the believability of the claimant's symptom descriptions at the hearing. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a reviewing court may only reverse a symptom assessment where it is "patently wrong." *Id*. at 816. The ALJ may not disregard subjective complaints "solely

8

because they are not substantiated by objective medical evidence." *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). SSR 16-3p requires the ALJ to consider factors such as medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors in assessing the severity of the claimant's symptoms. 2017 WL 5180304, at *7-8 (Oct. 25, 2017). The court will not disturb an ALJ's evaluation of a claimant's symptom description if it is logically based on specific findings and evidence in the record. *See Murphy*, 759 F.3d at 815.

Here David accuses the ALJ of rejecting his claims about subjective symptom statements merely because she found them to be "untruthful." (R. 10, Pl.'s Mem. at 7-10.) But consistent with SSR 16-3p, the ALJ considered the applicable factors in assessing the severity of David's symptoms and made specific findings to support her decision. The ALJ considered David's subjective symptom allegations, (A.R. 21-23), objective medical evidence, (id. at 20-23), medication and side effects, (id. at 21), opinion evidence, (id. at 23-24), and daily activities, (id. at 22-23). *See* SSR 16-3p, 2017 WL 5180304 at *7-8. Based on her review of the evidence and testimony, the ALJ determined that David was able to perform light work with limitations. (A.R. 19-24.)

As to David's statements regarding the intensity, persistence, and limiting effects of his symptoms, the ALJ determined that they lacked consistency, particularly with respect to his alleged need for frequent bathroom breaks. (Id. at 22.) For example, the ALJ noted David's December 19, 2016 report to Dr. Sethi that he has "intermittent urges" to use the restroom. (Id.) But during a visit the

9

following day with his primary care provider, David reported that he was "great." (Id.) The ALJ also pointed to inconsistencies regarding the frequency with which David allegedly needs to use the bathroom. At a March 2017 visit with Dr. Sethi, David reported the need to use the bathroom four to six times a day. (Id. at 21.) By October 2017, David reported needing to use the bathroom only three to four times a day. (Id.) At the February 2018 hearing, however, David reported needing to use the bathroom as many as seven times a day. (Id. at 42.) Yet he also testified that during a typical day, he has to use the bathroom three times a day, around 6:30 a.m., 2:00 p.m., and 6:00 p.m. (Id. at 43.) The ALJ determined that David's inconsistent statements undercut his claim that he required more frequent bathroom breaks. (Id. at 21-22.)

In terms of the objective medical evidence, the ALJ found that the record did not support the alleged disabling nature of David's impairments. (Id. at 21-23.) While the ALJ found David's Crohn's disease to be "severe," (id. at 17), she also determined that the disease had been "well managed" with medications, (id. at 20-21). The ALJ discussed David's history of surgical resections on his small bowel in 2001 and 2008 and drainage of a recurrent rectal abscess in 2006. (Id. at 20.) At the same time, the ALJ noted that since his alleged onset date David had undergone only a gallbladder surgery and routine colonoscopies showing inactive Crohn's or Crohn's in remission. (Id. 20-21.) The ALJ cited Dr. Sethi's treatment notes consistently showing that David's Crohn's was "very stable" and he was doing "very well" in terms of gastrointestinal issues during the relevant period. (Id. at 20

10

(citing id. at 431, 441 (noting in February 2015 that David had been "very, very stable over the last two to three years")).) Despite reporting diarrhea and intermittent urges to use the bathroom, on examination David was described as having a "soft and nontender" abdomen, a "lessening up" of diarrhea, and a reduction in the number of daily bowel movements. (Id. at 21.) The ALJ also found that the lack of "consistent abnormal findings" in the record undermined David's descriptions of his subjective symptoms. (Id. at 22.)

David claims that the ALJ cherry-picked objective medical evidence, ignoring records showing that he had "recurrent kidney stones," an elevated white blood cell count, a partial bowel obstruction, and pain and jaundice. (R. 10, Pl.'s Mem. at 9 (citing A.R. 434, 438, 442, 447, 452).) But these same records cited by David are consistent with the ALJ's findings insofar as they note: "[c]linically [David] has been doing fairly well," (A.R. 434); David's Crohn's "[p]resumably [] is well controlled," (id. at 438); his Crohn's is "stable" despite his white count going up and hemoglobin down "a little bit," (id. at 442); David may have had a partial bowel instruction that "resolved itself," (id. at 447); and David's "Crohn's has been stable," (id. at 452 (also noting that an upper endoscopy showed David had ulcer disease, but it was not "impressive")). The court thus finds no basis to conclude that the ALJ selectively cited objective medical evidence to support her opinion.

As to the effectiveness of David's treatment and medications, the ALJ found that David failed to seek "consistent medical treatment" or try certain medications recommended by Dr. Sethi. (Id.); *see also* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]f

11

the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."). After David had gallbladder surgery in March 2015, he did not seek treatment from Dr. Sethi until December 2016 for a routine follow-up visit. (A.R. 21.) Also, despite Dr. Sethi's recommendation that David try Imodium, Lomotil, or Questran for his diarrhea symptoms, David took Imodium only "occasional[ly]" and did not even try Lomotil or Questran. (Id.) The ALJ further pointed to treatment records showing that David was "doing very well on Humira." (Id. at 21; see also id. at 424 (noting "[g]ood response" to Humira), 441-42 (noting David was taking Humira with "very, very stable" results since about 2012), 458 (noting David "has actually done very well" on Humira).)

Finally, the ALJ addressed David's work status post-onset date and activities of daily living, noting that his medical records state in the present tense that he works in heating and air conditioning and actively swims, scuba dives, skis, and plays hockey and basketball. (Id. at 22; see also id. at 363, 395, 528, 534, 548.) The ALJ mentioned these records because, for at least some of these activities, "there may be times when there is no easy access to a restroom." (Id. at 23.) During the hearing, the ALJ questioned David about physical therapy notes from 2015 stating that he is an avid scuba diver and underwater photographer and plays hockey and baseball. (Id. at 60.) David responded that he had not engaged in those activities in

12

about four years. (Id. at 61.) The ALJ also referenced treatment records from late 2016 noting that David works as an electrician in heating and cooling. (Id. at 65.) David said that he had been installing an outlet in his garage. (Id. at 67.) Nonetheless, the ALJ decided that David's statements to providers were not consistent with his subjective symptom allegations. (Id. at 22-23.)

David argues that the ALJ's discussion here is tantamount to a credibility determination not permitted by current social security rules. (R. 10, Pl.'s Mem. at 10.) The government responds that even under the applicable rule, SSR 16-3p, "an ALJ can compare a claimant's statements alleging his symptoms and ability to work with his statements to medical sources about the limiting effects of their symptoms and efforts to work." (R. 16, Govt.'s Mem. at 12.) The government also acknowledges, however, that the ALJ "seemed to conclude . . . that [David] may have actually worked since the alleged onset date" despite David's testimony to the contrary. (Id.)

The court finds that the ALJ's discussion of David's statements to providers regarding the limitations of his symptoms does not render her symptom assessment erroneous. Regardless of whether the ALJ crossed the line into "gratuitous attacks on [David's] credibility," as David suggests, (R. 10, Pl.'s Mem. at 10), not every reason provided by an ALJ in support of a subjective symptom assessment must be valid, *see Halsell v. Astrue*, 357 Fed. Appx. 717, 722-23 (7th Cir. 2009). Rather, the symptom assessment simply must be supported by substantial evidence. *See Biestek*, 139 S. Ct. at 1154. Because the ALJ provided enough valid reasons to

13

support her symptom assessment, the court grants deference to the ALJ's assessment of his symptoms.

## B. Treating Source Opinion

David challenges the ALJ's rejection of the opinions of his longtime treating gastroenterologist, Dr. Sethi. (R. 10, Pl.'s Mem. at 10-12.) An ALJ who declines to give controlling weight to the opinion of a treating physician must provide "good reasons" to support how much weight, if any, she assigned to it.[2] 20 C.F.R. § 404.1527(d)(2); *see Eakin v. Astrue*, 432 Fed. Appx. 607, 612 (7th Cir. 2011). In doing so, the ALJ must consider certain regulatory factors, such as the length, nature, and extent of the treatment relationship, the physician's specialty, the supportability of the physician's opinion, and the opinion's consistency with the record. 20 C.F.R. § 404.1527(c); *see also Collins v. Berryhill*, 743 Fed. Appx. 21, 24 (7th Cir. 2018). So long as the ALJ considered these factors and "minimally articulated" her reasons for discounting the treating physician's opinion, her decision will stand. *Elder*, 529 F.3d at 415.

David argues that the ALJ offered "no cogent explanation" for giving only limited weight to Dr. Sethi's opinions. (R. 10, Pl.'s Mem. at 10.) As to the first opinion, Dr. Sethi noted in a December 19, 2016 treatment record that intermittent urges to use the bathroom and diarrhea are "pretty normal" in bowel resection patients. (A.R. 458.) Dr. Sethi then stated, "That will cause them problems in their

---

[2] New regulations went into effect on March 27, 2017, eliminating the treating physician rule. *See* 82 Fed. Reg. 58844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). However, David filed his DIB application before the effective date so the prior rules in 20 C.F.R. § 1527 apply here.

14

jobs unfortunately." (Id.) In evaluating this statement, the ALJ noted Dr. Sethi's treatment relationship with David but questioned whether the statement qualifies as an opinion given its "vague and general" nature. (Id. at 23.) Regardless, the ALJ afforded the statement only limited weight because it does not speak to David's functional limitations. (Id.)

David concedes that Dr. Sethi's December 2016 statement "was not an explicit opinion about [his] occupational prospects," but nonetheless contends that the ALJ should have evaluated the statement in accordance with regulatory factors because it was "probative [of] his ability to sustain work." (R. 10, Pl.'s Mem. at 11.) The government responds that Section 404.1527(c) applies only to a medical opinion, not to a vague or general statement that offers no specific information about functional restrictions or capabilities. (R. 16, Govt.'s Mem. at 8 n.2.) Even if the ALJ were required to evaluate the statement pursuant to Section 404.1527(c), the government argues that such an error was harmless because the statement sheds no light on the question of "how significantly" David's intermittent bathroom urges and diarrhea affect his ability to work. (Id. (emphasis omitted).)

The court finds no error in the ALJ's evaluation of the December 2016 statement. Earlier in her decision, the ALJ acknowledged Dr. Sethi's specialty as a gastroenterologist and his longstanding treatment relationship with David. (A.R. 20-22.) When evaluating the December 2016 statement, the ALJ again noted Dr. Sethi's treatment relationship, consistent with Section 404.1527(c). (Id. at 23.) But the ALJ could not proceed with analyzing such checklist factors as the

15

supportability or consistency of the statement with the record given that Dr. Sethi's statement was vague and general and did not provide specific functional restrictions. (Id.) Where, as here, the ALJ sufficiently articulated why she discounted the statement, her evaluation must stand. *See Elder*, 529 F.3d at 415.

Dr. Sethi's second relevant opinion was that David's symptoms would interfere with his attention and concentration frequently, precluding him from performing fast-paced tasks under strict deadlines. (A.R. 425.) Dr. Sethi noted that David can sit for four hours and stand or walk for four hours in an eight-hour workday, needs ready access to a bathroom, and requires breaks two to four times daily. (Id. at 425-26.) He also concluded that David may miss about four days of work each month because of his symptoms. (Id. at 426.)

The ALJ afforded limited weight to Dr. Sethi's second opinion. (Id. at 24.) While the ALJ credited the nature and extent of Dr. Sethi's treatment relationship with David, the ALJ noted inconsistencies between the record and Dr. Sethi's opinion. (Id.); *see Rainey v. Berryhill*, 731 Fed. Appx. 519, 523 (7th Cir. 2018) (noting that an ALJ "can give less weight to a treating source's opinion if it is inconsistent with the record"). For example, David testified during the hearing that he had "no problem" sitting, standing, or walking because of Crohn's. (A.R. 44.) Yet Dr. Sethi assessed restrictions on these activities. (Id. at 425.) Given objective evidence showing no "demonstrated abnormalities" and "stable Crohn's," the ALJ found that other limitations assessed by Dr. Sethi were speculative or based on David's subjective symptom allegations. (Id. at 24.)

16

David argues that the ALJ erred by rejecting Dr. Sethi's second opinion because she focused on "periods of dormancy" rather than "flare ups." (R. 10, Pl.'s Mem. at 11.) For support David cites his testimony regarding his need for frequent bathroom breaks when his symptoms flare up. (Id.) As explained above, however, the ALJ appropriately considered David's statements of subjective symptoms and found them to be not as severe as alleged. *See Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) ("An ALJ may properly discount a treating physician's opinion when the opinion relies heavily on the claimant's subjective allegations despite negative findings."). Also, the ALJ cited objective medical evidence, including from Dr. Sethi's treatment notes, showing that David's Crohn's was well controlled with medication and remained inactive or in remission from the alleged onset date through the date of the ALJ's decision. (See, e.g., A.R. 41, 424, 431, 434, 436, 441, 458, 475, 480, 694-95, 558-59.) The ALJ's reasons are sound and "sufficiently specific" to allow the court to understand the weight the ALJ assigned to Dr. Sethi's second opinion. *See Eakin*, 432 Fed. Appx. at 612 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Gibbons v. Saul*, 801 Fed. Appx. 411, 415 (7th Cir. 2020) (finding that an ALJ may afford less weight to a treating source's opinion if she "articulates 'good reasons' for doing so"). Accordingly, the court finds no error in the ALJ's evaluation of Dr. Sethi's opinions.

**C.     RFC Assessment**

David argues that the ALJ did not support with substantial evidence her RFC finding that one extra bathroom break daily would be sufficient. (R. 10, Pl.'s

17

Mem. at 12-14.) David cites his hearing testimony for support, asserting that during a flare up—and even when his Crohn's is dormant—he requires bathroom breaks five to seven times a day. (Id. at 12-13.) The ALJ acknowledged this testimony, as well as similar symptom allegations by David, but discounted his statements as explained above. To be sure, the ALJ pointed to the lack of consistency in David's description of his subjective symptoms, (A.R. 21-23), objective medical evidence demonstrating stability in his Crohn's, (id. at 20-23), the efficacy of his medications, (id. at 21), and the lack of consistency in treatment, (id.), to show why the record as a whole does not support limitations beyond those included in her RFC assessment.

David also points to medical evidence that he alleges supports his inability to work because of Crohn's. (R. 10, Pl.'s Mem. at 13.) The evidence he cites notes issues with diarrhea, bleeding, nausea, vomiting, and other symptoms. (Id.) But in her decision the ALJ considered such evidence and determined, based on the record as a whole, that two 15-minute breaks, a lunch break, and an additional bathroom break would be sufficient during an 8-hour workday. (A.R. 19-24.) As discussed above, the same records cited by David support the ALJ's RFC assessment because they note that he is "doing fairly well," (id. at 434), his Crohn's appears "well controlled" and "stable," (id. at 438, 442), and despite possibly having had a partial bowel instruction, it "resolved itself," (id. at 447). The record does not suggest that the ALJ improperly cherry-picked evidence to support her decision.

Finally, David argues that Dr. Sethi's opinions require greater limitations. (R. 10, Pl.'s Mem. at 14.) As explained above, the ALJ appropriately considered those opinions and determined that they were entitled to limited weight. The court found no error in the ALJ's evaluations of those opinions. David suggests that the ALJ erred in particular by not crediting Dr. Sethi's opinion that David's symptoms frequently would interfere with his attention and concentration, precluding him from sustaining competitive work. (Id. at 13-14.) But David did not testify at his hearing that his Crohn's affects his ability to concentrate, persist, or maintain pace, (A.R. 31-82), and in his DIB application David confirmed that he can pay attention for "long periods," (id. at 203). David does not point to any evidence supporting Dr. Sethi's opinion in this regard. And courts are not required to sift through the record to find evidentiary support for blunderbuss claims. *See, e.g., Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014) ("[A] brief must make all arguments accessible to the judges, rather than asking them to play archaeologist with the record."). Accordingly, the ALJ appropriately accounted for all of David's limitations in her RFC.

## Conclusion

For the foregoing reasons, David's motion is denied, the government's is granted, and the Commissioner's final decision is affirmed.

                   **ENTER:**

                   */s/ Young B. Kim*
                   **Young B. Kim**
                   **United States Magistrate Judge**